**Case No. 25-1519**

# United States Court of Appeals

## For the First Circuit

GINA RUSSO,

Plaintiff - Appellant,

v.

NEW HAMPSHIRE NEUROSPINE INSTITUTE, P.A.; URI M. AHN,

Defendants - Appellees.

On Appeal from Orders and Judgment of the United States District Court
for the District of New Hampshire

Case No. 1:21-cv-00703-SM-TSM (Hon. Steven J. McAuliffe)

BRIEF OF APPELLEE URI M. AHN

David Betancourt, Esq. (# 1218743)
Dona Feeney, Esq. (# 1085114)
FEENEY FRIEDMAN GETMAN PLLC
95 North State Street Ste 5
Concord, NH 03301
(603)-688-9994
dbetancourt@friedmanfeeney.com
dfeeney@friedmanfeeney.com
*Counsel for Uri M. Ahn*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS .......... 2

TABLE OF AUTHORITIES .......... 3-4

STATEMENT OF THE CASE .......... 5-11

SUMMARY OF THE ARGUMENT .......... 12-13

STANDARD OF REVIEW .......... 13-14

ARGUMENT .......... 14-24

CONCLUSION .......... 24

CERTIFICATE OF COMPLIANCE .......... 25

CERTIFICATE OF SERVICE .......... 25

**TABLE OF AUTHORITIES**

*Bickerstaff v. Vassar College* 196 F.3d 435 (2nd Cir. 1999)……………………..22, 24

*Cocuzzo v. Trader Joe's East Inc.*, 121 F.4th 924 (1st Cir. 2024)………………..18

*Davila v. Corporacion De P.R. Para La Difusion Publica* 498 F.3d 9 (1st Cir. 2007)…………………………………………………………………….......22

*Davric Me. Corp. v. Rancourt* 216 F.3d 143 (1st Cir. 2000)……………..............24

*Dennis v. Osram Sylvania Inc.*, 549 F.3d 851 (1st Cir. 2008)…………………….…13

*Douglas v. United Servs. Auto Ass'n* 79 F.3d 1415 (5thCir. 1996)………………..21

*Lang v. Wal-Mart Stores East, L.P.* 813 F.3d 447 (1st Cir. 2016)……………….…..22

*Lopez-Hernandez v. Terumo P.R. LLC*, 64 F.4th 22 (1st Cir.2023)……….........13

*MacRae v. Mattos*, 106 F.4th 122 (1st Cir. 2024)………………………………...13

*McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973)……………………….16

*Reeves v. Sanderson Plumbing Prods* 530 U.S. 133 (2000)………………15, 16, 17

*Rolfs v. Home Depot USA, Inc.*, 971 F. Supp. 2d 197 (DNH 2013)………………15

*Saketkoo v. Administrators of the Tulane Educ. Fund*, 31 F.4th 990 (5th Cir. 2022)…………………………………………………………………...16

*Santiago v. Canon U.S.A*, 138 F.3d 1 (1st Cir. 1998)…………………………..21

*Serrano-Colon v. United States Dep't of Homeland Sec.*, 121 F.4th 259 (1st Cir. 2024)……………………………………………………………………17

*Smith v. Stratus Computer* 40 F.3d 11 (1st Cir. 1994)…………………..........17, 23

*Thompson v. Coca-Cola Co*. 522 F.3d 168 (1st Cir. 2008)…………….............13, 14

*U.S. Equal Emp. Opp. Comm'n v. Fuller Oil Co.* 168 N.H. 606 (2016)……....14, 15

*Velazquez-Fernandez v. NCE Foods, Inc.* 476 F.3d 6 (1st Cir. 2007)……….........16

RSA 354-A…………………………………………………………….......12, 14

RSA 354-A:7……………………………………………………………...14

## STATEMENT OF THE CASE

Dr. Uri M. Ahn is an orthopedic surgeon who has practiced in New Hampshire since 2000. RA 0648 at 11:01-12:15. Plaintiff Gina Russo was hired as a physician's assistant at New Hampshire Neurospine ("NHNSI") on March 11, 2008. RA 0002. NHNSI includes two specialty practice areas, neurosurgery and orthopedic surgery. RA 0226 at 16:2-10. Dr. Ahn worked for NHNSI as a surgeon and was also Vice-President and a partner. RA 0649 at 13:2-4. Dr. Ahn and Plaintiff worked for New Hampshire Neurospine together without incident for approximately eight years from March of 2008 until October of 2016. RA 0271 at 25:8-15. During that time period, Plaintiff developed a negative opinion of Dr. Ahn, as she expressed to another partner, Dr. Wang, her opinion that Dr. Ahn was lazy and cut corners. RA 0331 at 70:22-71:9.

Between October of 2016 and March of 2019, three incidents occurred that permanently altered the professional working relationship between Plaintiff and Dr. Ahn. None of these incidents had any bearing on gender discrimination. In the first incident in October of 2016, Dr. Ahn was on practice call and was attending his son's hockey game. As Dr. Ahn was within an hour and half driving distance of the practice, he was in compliance with NHNSI's applicable rules regarding on-call medical providers. RA 0658 at 49:23–50:9; RA0744 at 44:1–10; RA0764 at 17:9–17. Plaintiff at the time was doing rounds at Elliot Hospital in Manchester.

RA 0005. While there, a patient of NHNSI neurosurgeon Dr. Wang coded with a cardiac condition unrelated to Dr. Wang's procedure. RA 0662 at 66:14-18. Dr. Ahn called Plaintiff and asked her to see a patient at St. Joseph's Hospital in Nashua with a lumbar epidural abscess. RA 0542 at 62:15–19, 63:14–17. Plaintiff refused, indicating she could not leave Elliot Hospital because she was reporting and monitoring Dr. Wang's patient. RA 0542 at 64:17-23, RA 0543 at 67:7-11. This was despite the fact the patient did not require any treatment from Plaintiff as the protocol was for treatment by the code team. RA 0249 at 66:14-18, RA 0229 at 127:16-128:2. Dr. Ahn's wife Keri-Ann Ahn was present in the car when Dr. Ahn and Plaintiff had this conversation. RA 0341-0342 at 15:17-16:19. Ms. Ahn is a nurse, knew Plaintiff as a colleague, and had a friendly co-working relationship with her. RA 0338 at 12:18-22, 0339-0340 at 13:17-14:7, RA 0341 at 15:9-16. Ms. Ahn was shocked by Plaintiff's tone in that telephone conversation, which she found to be rude, hostile, and unprofessional. RA 0343-0344 at 18:23-19:5, RA 0345 at 24:11-20. Dr. Ahn concluded the conversation by simply asking Plaintiff to get to St. Joseph's as soon as she could, and Plaintiff ultimately did do so. RA 0248 at 65:19-66:11. Upset by this conversation, Dr. Ahn subsequently called Dr. Wang to verify that the information Plaintiff had told him about Dr. Wang's patient was truthful. RA 0328 at 57:4-7. During that conversation and in a subsequent one, Dr. Ahn complained to Dr. Wang that he believed Plaintiff had

been rude and insubordinate. RA 0328 at 57:14-16, RA 0329 at 60:11-16. Plaintiff herself also subsequently called Dr. Wang and expressed her belief that it had been inappropriate for Dr. Ahn to ask her to travel to St. Joseph's. RA 0329 at 60:7-10, RA 0330 at 61:1-5. Dr. Ahn made a further complaint to NHNSI Executive Director Ann-Talbot-Kleeman about Plaintiff's conduct, but left it entirely to her discretion as to what action (if any) to take. RA 0228 at 122:9-11, RA 0250 at 68:8-17, RA 0252 at 77:12-15. Executive Director Talbot-Kleeman responded by having a conversation with Plaintiff and encouraging her to "clear the air" with Dr. Ahn. RA 0228 at 123:10-20.

There were no further issues between Dr. Ahn and Plaintiff for several months, until the summer of 2017. At that time, Plaintiff met with a patient having an orthopedic procedure to obtain his consent for a surgery. RA 0296-0297 at 120:16-121:2, RA 0298-0299 at 124:11-125:1, RA 0253 at 78:18-22. The patient had concerns about the procedure and wanted to minimize the risks of needing a second surgery; Plaintiff therefore suggested an alternative surgical procedure, different from what Dr. Ahn was recommending, which she told the patient would be less risky. RA 0300-0301 at 126:14-127:6. However, Plaintiff commented that she wasn't sure whether Dr. Ahn "would do or want to do" that particular operation. RA 0301 at 127:6-10. Plaintiff consulted with another surgeon, Dr. Luther, who advised her that the procedure Plaintiff was suggesting was possible.

RA 0302 at 128:5-14. Plaintiff expressed that to the patient, adding that she didn't know "what Dr. Ahn's feelings would be on this." RA 0302 at 128:15-19.

After Plaintiff had completed the consultation, the patient's wife called Dr. Ahn and told him that the PA who had consented them had explained that other surgeons would not do the surgery the way he was recommending and that they therefore had doubts about his surgical plan. RA 0254 at 80:1-6. Dr. Ahn was upset that Plaintiff had, in his opinion, had given an inappropriate surgical opinion and damaged his relationship with his patient. RA 0254-0255 at 80:15-81:9. As he testified:

> "I felt like my trust in [Plaintiff] was betrayed and I was in a bad situation with a patient who lost confidence in me who had a lot of doubt . . . the last thing I want is a physician's assistant making my life harder or negatively affecting my physician-patient relationship which is critical in surgery. In surgery, people are putting so much trust in you, people are voluntarily being given medications that are so strong they have to sleep through those operations that we subject them to, but when that trust gets eroded because of an interaction with a physician's assistant, it's incredibly damaging."

RA0666 at 81:16–82:6.

Dr. Ahn told Plaintiff he was not happy with her actions and that her conduct was inappropriate as a PA, and that it went beyond the scope of obtaining surgical

consent, which was her task. RA0665 at 80:2–16; *id.* at 0667:12–15. A PA does not have the authority to suggest procedures to patients or to come up with surgical plans, and Dr. Ahn's concern that Plaintiff undermined his credibility with his patient (and thus jeopardized the patient's trust) was a valid one. RA0665 at 80:15–21; 81:2–5, 81:17–82:6; RA 0622 at 136:10–137:6. Plaintiff admitted that Dr. Ahn told her "he had to win back the patient's trust because of [her]." RA0560 at 133:10–11.

After Dr. Ahn's trust in Plaintiff was shattered by this incident, he requested that Executive Director Talbot-Kleiman stop assigning Plaintiff to any of his surgical cases. RA0666 at 81:1–9 . As Dr. Ahn testified, "[T]he way [the consent] was handled, I felt, was unprofessional. It gave a surgical opinion that was inappropriate and severely damaged the trust the patient had in my judgment, and that, I believe, is when I lost trust in [Plaintiff] and I told Anne [Talbot-Kleeman] that this is not somebody that I can trust in the operating room, and that's, I believe, when I asked that she not be in my surgical cases." RA 0673 at 111:16–112:4; RA0625 at 146:13–14.

There were other PA-C's that Dr. Ahn had requested not to operate with in the past, including one other female PA-C, Georgia Plamondon, and two male PA-C's, Michael Smith and Russel Denysky. RA 0243 at 40:19-23. Plaintiff did not object and never requested an opportunity to work with Dr. Ahn. RA 0625 at

147:10-12. Occasional instances arose where Plaintiff was listed as being on Dr. Ahn's schedule, and the Plaintiff would then raise that as an issue with the scheduler. RA 0290 at 91:7-22.

No further incidents between Dr. Ahn and Plaintiff arose for over a year until March 9, 2019. On that date, both Dr. Ahn and Plaintiff were on-call; Dr. Ahn was working at Elliot Hospital in Manchester while Plaintiff was at Catholic Medical Center, also in Manchester. RA 0563 at 146:2-3. Dr. Ahn called Plaintiff and requested help discharging a patient. RA 0563 at 146:15-17, 147:8-10; RA 0263 at 137:4-14. Plaintiff responded by asking Dr. Ahn if he needed her to "to talk him through how to discharge the patient" or if he wanted her to do the discharge "when [she] went home." RA0563 at 146:17-23. During that conversation, Plaintiff raised her voice. RA0568 at 168:14-169:17. Dr. Ahn believed she was yelling at him. RA 0680 at 138:14-21. Dr. Ahn ended the conversation. RA 0680 at 138:20-23. Dr. Ahn subsequently called Executive Director Talbot-Kleeman and reported that Plaintiff had acted in an insubordinate and unprofessional manner during the phone call; he memorialized his concerns in writing via an email. RA0680 at 138:23–139:4; RA0347. Plaintiff also sent an email to Executive Director Talbot-Kleeman complaining about Dr. Ahn. RA 0349. Talbot-Kleeman met with Plaintiff, who reiterated her opinion that she thought Dr. Ahn was lazy and "took shortcuts with patient care which causes

problems and safety concerns." RA0014 ¶ 62; RA0627 at 156:5-16. Plaintiff also called Dr. Ahn names to Talbot-Kleeman. RA0628 at 158:10–14.

NHNSI held a board meeting on March 25, 2019. RA 0627 at 157:3-4. At the meeting, Dr. Ahn indicated that he could no longer work with Plaintiff and opined that she was disrespectful, insubordinate, and difficult to work with. RA0718 at 104:12–23, 105:10–13; RA 0629 at 154:20-155:7; RA 0333 at 104:12-21; RA 0322-0323 at 47:11-48:10. Dr. Ahn gave examples of instances where he perceived Plaintiff to be insubordinate and unprofessional, particularly the negative interaction between him and Plaintiff that occurred on March 9, 2019. RA0718 at 104:12–23. Dr. Ahn told his partners that if Plaintiff was not terminated from the Practice, he would leave. RA0745 at 48:3–5. Dr. Ahn explained that he felt disrespected by Plaintiff and did not want to put himself in a position to continue experiencing it. *See* RA1067; RA 0685 at 158:18–21 ("I'm not going to stay at a practice as a partner being verbally abused. I won't tolerate that. I have enough self-esteem not to accept that."). None of the partners could come up with any alternative, workable option that would allow both Plaintiff and Dr. Ahn to remain at the Practice given the deep distrust that had developed between the two.

RA0629 at 165:8–23. Every partner on the Board unanimously decided to terminate Plaintiff's employment. RA0629 at 165:8–11.

In response to Plaintiff's subsequent complaints of gender discrimination, in July of 2019 NHNSI retained Attorney Elizabeth Bailey as an independent investigator to look into Plaintiff's allegations. RA0643 at 218:5–13. Attorney Bailey interviewed Plaintiff, Dr. Ahn, and multiple employees at NHNSI and drafted detailed findings of fact and a report. RA0859–RA0860 at 25:14–26:5; RA0497. Attorney Bailey did not find any evidence of gender discrimination by Dr. Ahn or the practice. RA0861 at 33:18-22; RA0507–508.

## SUMMARY OF THE ARGUMENT

The sole issue on appeal with respect to Dr. Uri M. Ahn is the dismissal of Count III of Plaintiff's complaint alleging that Dr. Ahn aided and abetted gender discrimination by NHNSI in violation of the New Hampshire Law Against Discrimination, RSA 354-A. The District Court's ruling in favor of Dr. Ahn on this issue should be affirmed. There is no genuine issue of material fact supporting Plaintiff's claim of gender discrimination. The evidence shows that the working relationship between Dr. Ahn and Plaintiff deteriorated over the course of a three-year period between October of 2016 and March 2019 based on three discrete incidents which provided a valid, non-discriminatory basis for the decision of

NHNSI to terminate Plaintiff's employment. Plaintiff's assertion that Dr. Ahn's motivation was discriminatory animus is purely speculative and not supported by the evidentiary record.

**STANDARD OF REVIEW**

In reviewing an order granting a motion for summary judgment, the Court reviews the decision *de novo*, meaning the Court "give[s] the arguments and the issues a fresh look without any deference to the district court's reasoning." *MacRae v. Mattos*, 106 F.4th 122, 132 (1st Cir. 2024). At the summary judgment stage, the Court "need not exclude all interested testimony," particularly where that testimony is uncontradicted and unimpeached. *Dennis v. Osram Sylvania Inc.*, 549 F.3d 851, 856 (1st Cir. 2008); *Lopez-Hernandez v. Terumo Puerto Rico, LLC*, 64 F. 4th 22, 30(1st Cir. 2023). The Court must determine "whether there are any genuine disputes of material fact and whether the summary-judgment movants (here, Defendants) are entitled to judgment as a matter of law based on those undisputed facts." *Macrae* at 132. "To defeat a motion for summary judgment, the evidence offered by the adverse party cannot be merely colorable or speculative….but must be significantly probative of specific facts." *Thompson v. Coca-Cola Co.* 522 F.3d 168, 175 (1ST Cir. 2008) [internal quotations and citations

omitted]. In doing so the Court "must disregard improbable or overly attenuated inferences, unsupported conclusions, and rank speculation." *Id.*

## ARGUMENT

Plaintiff originally advanced three Counts against Dr. Ahn in her complaint. Count II asserted retaliation under Title VII and the New Hampshire Law Against Discrimination (RSA 354-A); Count III alleged aiding and abetting gender discrimination; and Count V alleged defamation. All other counts were directly solely against co-defendant NHNSI. RA 0021-0026. The District Court granted summary judgment in favor of Dr. Ahn on all counts. AD 004-024. In reference to Dr. Ahn, Plaintiff appeals only the dismissal of the Count III alleging aiding and abetting gender discrimination under NH RSA 354-A. P.B. at 2; RA 0022.

New Hampshire RSA chapter 354-A, entitled the Law against Discrimination ("NHLAD") prohibits "aiding, abetting, inciting, compelling or coercing another or attempting to aid, abet, incite, compel or coerce another to commit an unlawful discriminatory practice." RSA 354-A:7. NHLAD permits a Plaintiff to pursue a claim against an employee of a company such as Dr. Ahn individually *if* the Plaintiff can establish that the individual "aided and abetted an unlawful discriminatory practice committed by an employer." *U.S. Equal Emp. Opp. Comm'n v. Fuller Oil Co.* 168 N.H. 606, 611 (2016); *RSA* 354-A:7. Whether

an employer has committed an unlawful discriminatory practice under NHLAD is analyzed using Title VII analytical standards. *Rolfs v. Home Depot USA, Inc.*, 971 F. Supp. 2d 197, 208 (D. N. H. 2013). If the Plaintiff cannot establish that the employer committed a discriminatory practice, then "there can be no individual employee liability for aiding and abetting." *U.S. Equal Emp. Opp. Comm'n v. Fuller Oil Co.* 168 N.H. 606, 611 (2016).

The discriminatory practice identified by Plaintiff in her brief is Plaintiff's employment termination. *P.B.* at 19. Plaintiff argues that the evidentiary record supports the existence of an issue of material fact pursuant to *Reeves v. Sanderson Plumbing Prods* 530 U.S. 133, 137 (2000). *P.B.* at 19. However, the *Reeves* case relied on by Plaintiff analyzed only whether "a defendant is entitled to judgment as a matter of law when the plaintiff's case consists exclusively of a prima facie case of discrimination and sufficient evidence for the trier of fact to disbelieve the defendant's legitimate, nondiscriminatory explanation for its action." *Reeves* at 137. Although finding that the defendant was not entitled to judgment as a matter of law in that case, the Court stated that "this is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was

discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred…. Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49 [internal citations omitted].

As NHNSI notes in its brief, Plaintiff misstates the elements of a prima facie case for gender discrimination under Title VII, citing to *Velazquez-Fernandez v. NCE Foods, Inc.* 476 F.3d 6, 11 (1st Cir. 2007), a case that applied the *McDonnell-Douglas* standard to claims of age discrimination. *P.B. at* 23; *McDonnell Douglas Corp. v. Green* 411 U.S. 792, 802-805 (1973). The *McDonnell Douglas* elements, however, do not apply universally to all Title VII categories. *See Saketkoo v. Administrators of the Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022) ("the precise formulation for making a prima facie case can vary by circuit and, more granularly, by protected class and adverse employment action.") The correct

articulation of the *McDonnell Douglas* standard by the First Circuit vis-à-vis sex discrimination is that a plaintiff must establish a prima facie case by showing that "(1) she belonged to a protected class, (2) she performed her job satisfactorily, (3) her employer took an adverse employment decision against her, and (4) her employer continued to have her duties performed by a comparably qualified person." *Serrano-Colon v. United States Dep't of Homeland Sec.*, 121 F.4th 259, 270 (1st Cir. 2024)**.** If the Plaintiff makes that prima facie case, "the burden of production then shifts to the defendants to state a legitimate, nondiscriminatory reason for the adverse employment action." *Id. Reeves* specifies that this is a light burden: "one of production, not persuasion; it can involve no credibility assessment." *Reeves*, 530 U.S. at 142. The defendant is then entitled to summary judgment unless Plaintiff can "introduce sufficient evidence to support two additional findings: (1) that the employer's articulated reason for the job action is a pretext, and (2) that the true reason is discriminatory." *Smith v. Stratus Computer* 40 F.3d 11, 16 (1st Cir. 1994).

In this case, the record conclusively establishes that the articulated reason for Plaintiff's termination was that Dr. Ahn, who was a supervisor, concluded she was disrespectful, insubordinate and unprofessional based on the three incidents that occurred between October of 2016 and March of 2019. Plaintiff's unprofessionalism was witnessed in October 2016 by Dr. Ahn's wife, Keri-Ann

Ahn. Moreover, the incident in the summer of 2017 between Plaintiff and Dr. Ahn was viewed by Dr. Ahn as a serious issue. There is no dispute that Plaintiff damaged the doctor-patient relationship by suggesting to Dr. Ahn's patient an alternative surgical procedure to the one Dr. Ahn had developed and indicating that (1) it could be less risky than what Dr. Ahn had planned, (2) that it was endorsed by another surgeon in the practice, and (3) that she wasn't sure whether or not "Dr. Ahn would" agree to it. RA 0300-0302. This led to both the patient and his family becoming upset with Dr. Ahn, and Dr. Ahn feeling "betrayed" by Plaintiff and feeling that she could not work with him in his operating room. RA 0665, 0673.

Plaintiff has not offered sufficient evidence to rebut Dr. Ahn's stated testimony that he sought to terminate Plaintiff because she was disrespectful. Dr. Ahn has been consistent in his reasoning for seeking Plaintiff's termination throughout the entirety of the process. *See Cocuzzo v. Trader Joe's East Inc.*, 121 F.4th 924, 935 (1st Cir. 2024) (where employer "never wavered from the core explanation for its action," various rationales identified followed "obviously" from that core reason and did not amount to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions . . . unworthy of credence"). At the partners' meeting, Dr. Ahn told his partners he could not work with Plaintiff because she was disrespectful, insubordinate, and difficult to work with, and gave

examples of that behavior – including his negative interaction in March 2019. RA0718 at 104:12–23, 105:10–13.

In order to establish the existence of a discriminatory animus, Plaintiff attempts to argue that Dr. Ahn's opinion was influenced by impermissible sex stereotyping. To do so, Plaintiff relies on a single statement (or, as Plaintiff terms it, an "admission") made by Dr. Ahn to the investigator after Plaintiff's termination, where he said he "couldn't look himself in the mirror as a husband and father to small children if he allowed himself to be treated with such disrespect." RA 1067.[1] Plaintiff ignores the context of the "admission," where Dr. Ahn discussed that as a member of a minority he had been forced to deal with "discrimination and hateful comments" for his entire life. RA 1067. The idea that Dr. Ahn's desire to work with colleagues who do not disrespect him and make hateful comments is "unlawfully motivated to preserve specific gender roles" as

[1] The investigator, who included the so-called "admission" by Dr. Ahn in her report to illustrate the level of disrespect that Dr. Ahn felt from his interactions with Plaintiff, ultimately found that there was no discriminatory act by Dr. Ahn or the Practice. RA 1098; RA 1067 ("Dr. Ahn felt that there was a basic level of human respect which needed to be observed, and Ms. Russo had crossed that line of respect. Dr. Ahn could not continue to work with Ms. Russo because Dr. Ahn's greatest fear was that she would treat him like that again. Dr. Ahn explained to me that he couldn't look himself in the mirror as a husband and father to small children if he allowed himself to be treated with such disrespect. Dr. Ahn had been with NHNSI for over twenty years, but he felt so strongly about this that he had decided if his Partners did not support him concerning this disrespect issue, he would need to leave the Practice.").

Plaintiff asserts is pure speculation. Dr. Ahn's statement expresses a sentiment that is entirely consistent with his expressed reasoning for seeking Plaintiff's termination: that he was disrespected.

Moreover, his belief that Plaintiff disrespected him was objectively true. Plaintiff had described him to Dr. Wang as "lazy" and accused him of "cutting corners." RA 0331. Plaintiff admits she reiterated her same opinion to Executive Director Talbot-Kleeman in March 2019. Not only did Plaintiff tell Talbot-Kleeman that she believed that Dr. Ahn was "lazy" but she also expressed that she did not respect him. RA0680:139; RA0380:9–16 ("[T]here really was a lot of anger on [Plaintiff's] part about this person [Ahn] that was a provider that she needed to be able to interact with."); RA0381:10–12 ("She, you know, was calling [Ahn] names that I didn't think were going to be things we could reconcile[.]"). Tellingly, Investigator Bailey concluded after interviewing Plaintiff that by March of 2019 Plaintiff "did not hold Dr. Ahn in high regard…there was evidence that she did not view him well or respect him…" RA 0872 at 75:14-19.

Nor did Dr. Ahn ever give a "false explanation" of his desire to terminate Plaintiff. Dr. Ahn testified that he was aware that Plaintiff had told Talbot-Kleeman that she thought Dr. Ahn was lazy and did not respect him. RA 0680 at 139:5-11. However, Dr. Ahn testified that he was unsure about the timing of when he heard about that conversation. RA 0680 at 140:1-2. Rather, Dr. Ahn stated that

it was Plaintiff's yelling at him in March of 2019 that was the "final straw" which led to his decision to seek her termination. RA 0681 at 141:2.

Throughout her brief, Plaintiff attempts to paint a malicious picture of Dr. Ahn by unfairly and falsely attributing characteristics and descriptions to him that are not supported by the evidentiary record. P.B. at 35 (baselessly stating – without citation to the record – that Ahn "lashes out when he perceives professional women 'dare' to do things, 'disobey' him, or fail to exhibit appropriate deference"); *id.* at 41 (stating that Ahn described himself as "livid," without any record support for same); at *id.* at 42 (falsely asserting that Ahn admitted he yelled and blew up, while citing to record citations that do not support Ahn admitting this); *see also* RA 0680 at 40:9–15 (where Ahn denies ever saying he "lost it" or "blew up"). Plaintiff's character assassination is unsupported by the evidentiary record and is an attempt to create a subjective narrative that is "not evidence." *Santiago v. Canon U.S.A*, 138 F.3d 1, 6 (1st Cir. 1998) (quoting *Douglas v. United Servs. Auto Ass'n* 79 F.3d 1415, 1430 (5th Cir. 1996) "It is . . . well settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.") Plaintiff also relies on unsworn hearsay within hearsay in Catholic Medical Center documents and text messages involving conduct between Dr. Ahn

and individuals who were not NHNSI employees to unfairly demonize Dr. Ahn. *See* P.B. at 35–36. "It is black-letter law that hearsay evidence cannot be considered in summary judgment." *Davila v. Corporacion De P.R. Para La Difusion Publica* 498 F.3d 9, 17 (1st Cir. 2007); *Lang v. Wal-Mart Stores East, L.P.* 813 F.3d 447, 456 (1st Cir. 2016). These anecdotes on which Plaintiff relies are not material evidence to be considered for either Dr. Ahn's or the Practice's summary judgment motions, as they do not establish any proof that Dr. Ahn aided and abetted discriminatory practices against the Plaintiff. Further, they are not supported by sworn testimony as is required for their consideration on summary judgment. Nor do the facts of this case otherwise support Plaintiff's contention that Dr. Ahn engaged in gender stereotyping. Calling an individual rude and disrespectful is not evidence of gender stereotyping. *See e.g. Bickerstaff v. Vassar College* 196 F.3d 435, 451 (2nd Cir. 1999) ("Title VII does not insulate an individual from criticism that is not based on an impermissible reason"). Indeed, the District Court noted that "based on the record, Dr. Ah's expressed concern with professionalism and respect seems connected with his perception of the proper role of a PA in relation to a surgeon, not on gender." A.D. 018 at FN 11. Plaintiff's claim that Dr. Ahn "singled [Plaintiff and Georgia] out" for a suggested compensation reduction "without any specific reason" is untrue and misleading; Plaintiff and Georgia (Plamondon) were the only part-time PAs, and Dr. Ahn

testified that "they were part-time so they were working less. That's the only reason why I would have made that recommendation." RA0674 at 115:8–11.

Plaintiff also failed to establish any comparator evidence to support her claim of pretext. The burden of establishing comparator evidence is rigorous; the "Plaintiff has the burden of showing that she was treated differently form persons situated similarly in all relevant aspects." *Smith v. Stratus Computer* 40 F.3d 11, 17 (1st Cir. 1994*)*. Plaintiff's claim that "Ahn never demanded that any male PA's be excluded from working his OR" elides the fact that he also did not operate with two male PAs, Michael Smith and Russell Denysyk. RA 655 at 40:19–23. In fact, he advocated for their termination from the practice. RA0959-0960, 0976–77. In order to portray Dr. Ahn as maliciously as possible, Plaintiff omits telling this Court that one of the PAs with whom Ahn had the "best working relationship" with was a female PA named Karen Barry, née Palys, whom he described as "talented technically" and "professional." RA0676 at 124:6–18.

Dr. Ahn's issues with Plaintiff were not related to her gender. As Investigator Bailey found, "the collective evidence was that Dr. Ahn and Ms. Russo got to a point where they did not care for each other as people. They did not like the other person's working style. They did not mesh well with one another very well professionally." RA 0862 at 35:19-22. This personality clash had developed over the course of three years from October 2016 to March 2019, based

on the three discrete incidents that cumulatively affected their working relationship. Tellingly, although Plaintiff worked with Dr. Ahn for over a decade between 2008 and 2019, she never made a complaint of gender discrimination until after her termination.

Instead of presenting evidence that this personality clash was rooted in discriminatory animus, the Plaintiff instead provides after the fact speculation based on her opinion and feelings. Plaintiff's subjective belief that she experienced gender discrimination is insufficient to overcome summary judgment. *Davric Me. Corp. v. Rancourt* 216 F.3d 143, 150 (1st Cir. 2000) (holding that summary judgment was proper because the district court refused to "accept the nonmovant's subjective characterizations of events"); *Bickerstaff v. Vassar College* 196 F. 3d 435, 456 (2nd Cir. 1999) (employee's "feelings and perceptions of being discriminated against are not evidence of discrimination.")

**<u>CONCLUSION</u>**

For all these reasons, Plaintiff's discrimination claim that Dr. Ahn aided and abetted discrimination fails. The summary judgment granted in favor of Dr. Ahn (and NHNSI) should be affirmed.

Respectfully submitted,
DR. URI M. AHN
BY AND THROUGH HIS ATTORNEYS

/s/ David Betancourt, Esq.
David Betancourt # 1218743
/s/ Dona Feeney, Esq.
Dona Feeney # 1085114
FEENEY FRIEDMAN GETMAN PLLC
95 North State Street, Ste #5
Concord, NH 03301
(603)-688-9994
dbetancourt@friedmanfeeney.com
dfeeney@friedmanfeeney.com

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed R. App. P. 32 (g) (1), I hereby certify that this brief complies with the type-volume limitation of Fed R. App. P. 32 (a) (7) (B). The document contains 5,372 words in total. This document complies with the typeface requirement of Fed. R. App. P. 32 (a) (5) and (a) (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 Times New Roman font.

/s/ David Betancourt, Esq.
David Betancourt # 1218743

**CERTIFICATE OF SERVICE**

A copy of this memorandum was forwarded on all parties of record via the Court's electronic filing system.

/s/ David Betancourt